UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-CR-00334 (TJK) |
| : | |
| KATHARINE MORRISON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S PETITION TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States submits this response to the Defendant's Petition To Vacate Conviction and Sentence. (ECF 133). Nearly two years ago the Defendant pled guilty to 18 U.S.C. § 1512(c)(2) for her actions on January 6, 2021. In the intervening time, the Supreme Court narrowed the scope of that statute in *Fischer v. United States*, 144 S. Ct. 2176 (2024). Defendant now brings a collateral attack to vacate her conviction and sentence based on that decision. The Defendant's motion should be denied for two reasons. *First*, the Defendant waived her ability to raise this collateral attack in her plea agreement. As part of her plea agreement the Defendant agreed to limit her ability to raise issues on appeal and collateral attack in most circumstances. These express, bargained-for provisions are binding and preclude this attack on her conviction. *Second*, even assuming the Defendant's motion could overcome the collateral attack waiver, it fails to clear the significant procedural bars that apply to collateral attacks. To reach her argument on the merits, the Defendant must first show cause and prejudice or actual innocence. The Defendant has not acknowledged these requirements, articulated any cause or prejudice, or argued that she is actually innocent. Instead, she relies, incorrectly, on the fact that the statement of offense that accompanied her plea does not demonstrate that she "impaired or interfered with the use of records, documents, or other objects during an official proceeding." (Mot. at 3.) Even if

that were true, actual innocence is determined based on all evidence, not just that presented at the plea hearing. There is ample evidence, including that presented at sentencing, of the Defendant's crime for which reasonable juror could convict the Defendant under 18 U.S.C. § 1512(c)(2) as the statute is now understood post-*Fischer* and equally serious crimes which the government forwent charging. The motion should therefore be denied.

## BACKGROUND

On January 6, 2021, a riotous mob stormed the U.S. Capitol building and halted the certification of the 2020 Election, injuring over a hundred police officers protecting the building. The Defendant was one of those rioters. On January 6, 2021, the Defendant traveled from Dansville, New York to Bentleyville, Pennsylvania to meet with codefendant Dale Shalvey and codefendant Tara Stottlemyer. (ECF 75 ¶ 8.) Together the defendants traveled to Washington, D.C. for the purpose of protesting Congress' certification of the Electoral College vote. (*Id.*) The Defendant told Shalvey and Stottlemyer that that she would like to go to D.C. and hear former President Donald Trump speak. (*Id.*) On January 6, 2021, the Defendant attended the Women for Trump rally and then marched to the Capitol. (*Id.* ¶9.)

The Defendant breached the Capitol building through the Senate Wing Door at approximately 2:20 p.m. (*Id.* ¶10.) From there she went to various areas within the building, including, but not limited to, the Crypt, the Speaker of the House's Suite, the Rotunda, and the Senate Chamber. (*Id.*) While in the Senate Gallery hallway, Shalvey showed the Defendant and Stottlemyer zip ties that he had. (*Id.* ¶11.) After seeing the restraints, the Defendant, Shalvey, and Stottlemyer went to the Senate Chamber Press Gallery and then the Senate Chamber. (*Id.*) While in the Senate Chamber, the Defendant looked through Senators' desks and took pictures of documents that were in and on those desks. (*Id.*) She was inside the Senate Chamber for

approximately 10 minutes and within the restricted Capitol building without authorization for approximately 45 minutes. (*Id.* ¶11.)

The Defendant's phone was seized and searched pursuant to a federal search warrant. (*Id.* ¶ 12.) On her phone she had videos of law enforcement outside of the Capitol Building trying to prevent protestors from entering, a video of Shalvey and Stottlemyer on the East Front of the Capitol, a video while the Defendant was at the doors of the Senate, a video of a monitor in the Capitol stating that the Senate was in recess, a video in the Senate Chamber while the Defendant was there with Stottlemyer and Shalvey, a video showing the contents of a Senator's desk including a letter from Senator Mitt Romney to Vice-President Michael Pence, and a video showing a map of the Capitol. (*Id.* ¶ 12.)

For her conduct on January 6, the Defendant was charged, among other offenses, in Count Three of the Fourth Superseding Indictment with obstructing, impeding, and influencing an official proceeding. (ECF 48 at 2-3.) Count Three also explicitly referenced the Defendant's aiding and abetting of this offense under 18 U.S.C. § 2. On October 3, 2022, the Defendant entered a plea of guilty pursuant to a written agreement, (ECF 72), to Count Three of that superseding indictment, (ECF 48). Before her change of plea, the Defendant had not filed any motion seeking dismissal or challenging the sufficiency of the language charging any offense against her.

Among other provisions in her written agreement, the Defendant waived:

> insofar as such waiver is permitted by law, *the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s).* [The Defendant] understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. [The Defendant] also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the

3

> Court sentences [the Defendant] above the statutory maximum or guidelines range determined by the Court. In agreeing to this waiver, [the Defendant] is aware that [the Defendant's] sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, [the Defendant] knowingly and willingly waives [her] right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, [the Defendant] retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

ECF 72 at 7 (emphasis added).

She also waived:

> any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. [The Defendant] reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2).

ECF 72 at 7-8.

In consideration of her plea, the government agreed that the Defendant "[would] not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense." (*Id.* at 2.) Furthermore, the government agreed to not "charge[] [the Defendant] with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by [the Defendant] prior to the execution of this Agreement and about which this Office was made aware by [the Defendant] prior to the execution of this Agreement." (*Id.*)

The Defendant signed the plea agreement, acknowledging that she "discussed it with [her] attorney", accepted the plea "voluntarily and of [her] own free will", was "in fact guilty of the offense(s) identified in [the] [a]greement", and that she was "satisfied with the legal services provided by [her] attorney in connection with [the] [a]greement". (ECF 72 at 12.)

4

During the plea hearing, the Court placed the Defendant under oath. October 3, 2022 Transcript of Guilty Plea Hearing ("Tr.") at 4-5. The Defendant acknowledged understanding that untruthful responses to the Court could subject her to further prosecution for perjury. (*Id.*)

This Court then reviewed the terms of the Defendant's plea agreement. First, the Court requested the attorney for her codefendant to go over the terms of the codefendant's agreement and then confirmed with the Defendant's attorney that the terms were the same. (*Id.* at 33-34, 36.) The Court also went over the appeal and collateral attack waivers individually, stating:

> All right. Finally, let's quickly talk about the appeal provisions that I said -- I mentioned earlier and I said we would come back to and I'm going to make good on my word in that regard. You are giving up all in this agreement -- in these agreements, you are giving up all your rights to appeal except for a few exceptions.
>
> Do … you understand that by pleading guilty, you are giving up all your rights to appeal your conviction in this case except on the basis of ineffective assistance of counsel or if there was some fundamental defect in our proceeding that was not waived by your guilty plea? . . . Ms. Morrison?

Tr. at 47-48. The Defendant answered "Yes." *Id*.

> This Court next inquired:
>
> Do also … you understand that you are giving up the right to appeal the sentence I impose except to the extent I sentence you above the statutory maximum above what the law would allow or above the guidelines range that I determine or if you receive ineffective assistance of counsel in which case your right to appeal would be limited to those issues? Do you understand that, Ms. Stottlemyer? . . And Ms. Morrison?

Tr. at 48. The Defendant again answered "Yes." *Id*.

> Finally, this Court inquired:
>
> All right. And finally, do you understand that under the plea agreement, you're also giving up the right to what's called collaterally challenge or collaterally attack the conviction or sentence except in some very limited situations? To the extent that the challenge is either based on newly-discovered evidence or again a claim that you received ineffective assistance of counsel. Do you understand that, Ms. Stottlemyer? . . . Ms. Morrison?

Tr. at 48-49.  The Defendant answered "Yes."  *Id.*

During the change of plea proceeding, and also while still under oath, the Defendant also confirmed in response to this Court's questions that she was completely satisfied with the services of her attorney in this case and that she had "had enough time to talk with [her attorney] and to discuss the case, the charges, the plea offer and whether or not [she] should accept it".  Tr. at 51.  When asked if there were anything she did not understand about the plea proceeding or "about your plea in this case," the Defendant answered "No."  Tr. at 52.

This Court concluded that the Defendant:

is fully competent and capable of entering [her] guilty plea, that [she understands] the nature of the charges and the consequences of the plea and that the plea of guilty is knowing and voluntarily, that [the Defendant is] acting of [her] own free will in pleading guilty and that there is an adequate factual basis containing each of the essential elements of the offenses. Therefore, I accept the plea. And. . . Ms. Morrison [is] now adjudged guilty of Count Three of the fourth superseding indictment.

Tr. at 54.  This Court then set a sentencing date.  Prior to sentencing, the Defendant never sought to withdraw from her plea agreement.  On May 11, 2023, the Defendant was sentenced to eight months of incarceration.  Both parties filed a sentencing memorandum.  (ECF 102, 106.)  At sentencing the government provided more specific evidence of the Defendant's crimes.  For instance, the Defendant wore a helmet while at the Capitol building, clearly dressed for violence. (May 11, 2023 Tr. 51-52.)  Video evidence shows that while on the Senate Floor the Defendant opened and went through Senators' desks looking at documents and photographing them. (ECF 106-1 at 3-5.)  She instructed one of her co-defendants to "take a picture of that" referring to a document that her codefendant appeared to have found in the Senate Chamber.  (ECF 106 at 23; May 11, 2023 Tr. 55.)

6

Despite agreeing to a sentencing guideline range of 15-21 months as part of the plea, the Defendant was allowed to, and did, argue for a downward variance. (ECF 72 at 4-5; May 11, 2023 Tr. 80.) The government requested 18 months' incarceration. (ECF 106.) The Defendant requested a sentence of probation and in the alternative a sentence of home detention. (ECF 102.) Judgment was entered on May 15, 2023. (ECF 116.)

Since the Defendant's sentencing, *United States v. Fischer* was litigated in this district, the D.C. Circuit, and ultimately the Supreme Court, which issued its decision on June 28, 2024. *Fischer v. United States*, 144 S. Ct. 2176 (2024). In *Fischer*, the Supreme Court held that Section 1512(c)(2) does not cover "all means of obstructing, influencing, or impeding any official proceeding." *Id.* at 2185. However, the Court did not reject the application of § 1512(c)(2) to January 6 prosecutions. Rather, the Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted to do so. *Id.* at 2186, 2190. The Supreme Court remanded the case to the D.C. Circuit for further proceedings. *Id.* at 2190.

Based on the Court's decision in *Fischer*, on July 3, 2024, the Defendant filed a Petition To Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (ECF 133).

## LEGAL STANDARD

I.  Waiver

To succeed on her claim, the Defendant must first overcome the explicit bar in her plea agreement. "A 'knowing, intelligent, and voluntary' waiver of the right to appeal 'generally may be enforced.'" *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015) (*quoting United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009)). "The basic principle behind an appeal

waiver is that the defendant gives up his right to have an appellate court review the merits of his arguments in exchange for valuable consideration." *Khadr v. United States*, 67 F. 4th 413, 424 (D.C. Cir. 2023), *cert. denied*, No. 23-720, 2024 WL 2262403 (U.S. May 20, 2024). "Allowing the defendant to waive this right . . . improves the defendant's bargaining position and increases the probability he will reach a satisfactory plea agreement with the Government." *United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009). So too with collateral waivers. *See, e.g.*, *United States v. Koontz*, No. 16-cr-16 (EGS), 2024 WL 3225980, at *6 (D.D.C. June 28, 2024) (citing *Guillen* and declining to issue a certificate of appealability as to claims in § 2255 motion barred by collateral-attack waiver in plea agreement). The language of a waiver in a plea agreement is interpreted as a contract and will "preclude[] challenges that fall within its scope" if it is knowing and voluntary and thus enforceable. *See Garza v. Idaho*, 586 U.S. 232, 238 (2019) (addressing an appeal waiver); *United States v. Bertram,* 209 F. Supp. 3d 243, 249–50 (D.D.C. 2016) (enforcing waiver of collateral attack); *United States v. Brown*, Case No 16-cr-00169, 2018 WL 6920503, at *1 (D.D.C. Dec. 4, 2018) (same).

      II.    <u>Procedural Default</u>

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent'." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). Under the first prong, a defendant must demonstrate both cause and prejudice. Cause exists where there is "some 'objective factor external to the defense' [that] impeded efforts to raise an issue in trial or on direct appeal." *See United States v. Moore*, 75 F. Supp. 3d 568, 572 (D.D.C. 2014) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). And prejudice requires the defendant to show "actual prejudice of a degree sufficient to justify

8

collateral relief." *See United States v. Frady*, 456 U.S. 152, 168 (1982). The Defendant can alternatively demonstrate actual innocence. Actual innocence is "factual innocence". *See Bousley*, 523 U.S. at 623; *see also United States v. Henderson*, No. 22-3003, 2024 WL 3546163, at *4 (D.C. Cir. July 26, 2024). This is more than mere legal insufficiency. *Bousley*, 523 U.S. at 623. It requires the defendant to demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id*. (quotation omitted). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992); *see also United States v. Moore*, Case No. 1:08-cr-310-01-RCL, 2022 WL 2702375, at *2 (D.D.C. July 12, 2022) ("tenable actual-innocence gateway pleas are rare.") (*quoting McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)) (Lamberth, J.). "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624.

## ANALYSIS

I. <u>The Defendant waived her right to collaterally attack her plea agreement.</u>

The Defendant knowingly, intelligently, and voluntarily waived her right to this collateral attack in her plea agreement. As part of the bargained-for plea agreement, the Defendant waived "any right to challenge the conviction entered or sentence imposed under [the plea agreement] or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that [the Defendant] received ineffective assistance of counsel." (ECF 72 at 7-8.) She affirmed her agreement to this waiver in writing and later during her plea

colloquy. As her motion is not based on one of the enumerated exceptions to the collateral attack waiver, it is explicitly barred by the agreement.

Courts have affirmed the enforcement of collateral attack waivers in similar circumstances, rejecting defendants' arguments that a later Supreme Court decision voids their plea agreement because they are no longer guilty of the offense to which they pled. *See Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022) ("waivers of the right to bring postconviction challenges remain enforceable after changes in law. . . [t]he principle that future changes in law do not vitiate collateral-challenge waivers is mainstream."); *Cook v. United States*, 84 F.4th 118, 124 (2d Cir. 2023) (finding that "the enforceability of a collateral-attack waiver turns on whether the petitioner's plea was knowing and voluntary, not the nature of any subsequent legal developments."); *Oliver v. United States*, 951 F.3d 841, 845 (7th Cir. 2020) ("one major purpose of an express waiver is to account in advance for unpredicted future developments in the law."); *United States v. Goodall,* 21 F.4th 555, 562–64 (9th Cir. 2021) (rejecting the claim that the defendant had not foreseen a change in the law when he waived his appellate rights) *cert. denied*, 142 S. Ct. 2666 (2022). The D.C. Circuit's decision in *Khadr*, 67 F. 4th at 424, enforcing an appellate waiver, suggests that it will follow the same course here. *Khadr* argued that his military-commission plea was not knowingly made because the military judge had erroneously "ruled against him on the merits of his legal claims" and thereby "misinformed him about the nature and constitutionality of the charges against him." *Id.* The panel explained that Khadr could not "challenge [his] plea based on an alleged error of law that was raised, rejected[,] and then waived pursuant to the plea" where petitioner was "aware that the military judge had rejected his theories"

10

yet "nonetheless chose to plead guilty and expressly waive his right to appeal those erroneous (in his view) rulings." *Id.* The same logic applies here.[1]

The Defendant explicitly waived her right to collaterally attack her conviction. In writing and before the Court, she confirmed her agreement to the waivers. She cannot now attempt to reap the benefits of her bargain while not adhering to her side of the agreement. The Defendant has made no arguments otherwise and instead, completely ignores the waiver provision in her motion. The Defendant's plea agreement explicitly prevents her from challenging her conviction in this way.

II.     The Defendant's motion is procedurally barred.

Even if the Defendant did not waive her right to bring this motion, the Defendant's motion is still procedurally barred. The Defendant defaulted on her claim by failing to raise it on direct review. The Defendant pled guilty in October 2022 and was sentenced in May 2023. There is no dispute that the Defendant's time to appeal has elapsed. *See* Fed. R. Appellate Pro. 4(b). A defendant in a criminal case may not raise claims pursuant to 28 U.S.C. § 2255 which could have been resolved by the district court or on a direct appeal, but which were not raised at those stages, absent a showing of cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (general rule is that "claims not raised on direct appeal may not be raised on collateral review

---

[1] The Court's decision in *Bousley* that a defendant could bring an actual innocence claim where he alleged he did not know the "true nature of the charge against him" and therefore could not knowingly plead guilty to a crime is inapposite to the analysis of whether the collateral attack waiver was knowing and intelligent in this case. *Bousley*, 523 U.S. at 618, 624. There was no collateral attack waiver in the plea agreement at issue in *Bousley* whereas there is one here. This distinction is dispositive. *See Portis*, 33 F. 4th at 337 ("But a salient difference remains between that case and this one. Today's case involves defendants who agreed to waive collateral challenges to their convictions or sentences. That was not true in *Bousley*, and it is dispositive here."). A finding otherwise would invalidate collateral attack waivers when there are changes in the law and overread the Court's decision in *Bousley*.

unless the petitioner shows cause and prejudice"); *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *McClesky v. Zant,* 499 U.S. 467, 493 (1991).  The Defendant has not pursued the claims she raises now in any direct appeal.  To overcome that procedural default, she must demonstrate cause and actual prejudice or show that she is actually innocent.  The Defendant is unable to do either.

### a. The Defendant cannot demonstrate cause and prejudice.[2]

Cause does not excuse the Defendant's procedural default on appeal.  Under the first prong of *Bousley*, the Defendant can raise a procedurally defaulted claim under 28 U.S.C. § 2255 if she can demonstrate cause and actual prejudice.  *See Bousley*, 523 U.S. at 622.  "Cause for default exists 'where a constitutional claim is so novel that its legal basis is not reasonably available to counsel' on direct appeal."  *United States v. Johnson*, Crim No. 18-256 (TJK), 2023 WL 9781680, at *1 (D.D.C. Dec. 11, 2023) (*quoting Reed v. Ross*, 468 U.S. 1, 16 (1984)) (Kelly, J.).  That *Fischer v. United States* had not been decided at the time of the Defendant's plea or sentencing is not sufficient to establish cause under this standard.  As the Court explained in *Bousley*, "[w]hile we have held that a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default . . . petitioner's claim does not qualify as such . . . at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges [analogous to the one defendant now makes]."  *Bousley*, 523 U.S. at 622 (citation omitted); *see also United States v. Baxter*, 761 F.3d 17, 26 n. 12 (D.C. Cir. 2014); *Johnson*, 2023 WL 9781680, at *2 ("[M]any courts have concluded that, even when *Rehaif* was decided several months *after* a

---

[2] If a defendant fails to establish one prong of the cause and prejudice standard, a court need not consider both.  *See Frady*, 456 U.S. at 168; *United States v. Pettigrew*, 346 F.3d 1139, 1145 (D.C. Cir. 2003); *United States v. Dale*, 140 F.3d 1054, 1056 n.4 (D.C. Cir. 1998).

defendant's sentencing, such a claim was reasonably available because '[t]he issue decided in *Rehaif* [had been] percolating in the courts for years.'" (citation omitted)) (Kelly, J.).

The Defendant's case is similar. At the time of the Defendant's plea, there were many challenges to the scope of 18 U.S.C. 1512(c)(2).[3] This issue she now raises was not novel at the time of her plea or sentence and the application of § 1512(c)(2) was an open question. On March 7, 2022, seven months before the Defendant changed her plea to guilty, the decision in *United States v. Miller*, 589 F.Supp.3d 60 (D.D.C. 2022), was issued. *Miller* dismissed a Section 1512 count for reasons very similar to those articulated in *Fischer*, and the appeal from the ruling in *Miller* was consolidated with the appeal from the same ruling in the *Fischer* prosecution in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir 2023), *vacated and remanded*, 144 S. Ct. 4176 (2024). The *Fischer* appeal was being briefed before the D.C. Circuit at the time of the Defendant's plea and was decided a month before the Defendant's sentencing. Despite knowing about the claim, the Defendant never sought to withdraw her plea. The Defendant's claim was reasonably available at the time of her plea and sentence; she therefore cannot establish cause.[4]

---

[3] S*ee, e.g.*, *United States v. Fitzsimons*, 605 F.Supp.3d 132, 141-50 (D.D.C., 2022) (Contreras, J.); *United States v. Bingert*, 605 F.Supp.3d 111, 123-28 (D.D.C. 2022) (Lamberth, J.); *United States v. Hale-Cusanelli*, No. 21-cr-37 (D.D.C. May 6, 2022) (McFadden, J.) (motion to dismiss hearing at pp. 4-8); *United States v. McHugh* (*McHugh II*), No. 21-cr-453, 2022 WL 1302880, at *2-*13 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Puma*, 596 F.Supp.3d 90, 106-08 (D.D.C. 2022) (Friedman, J.); *United States v. Bozell*, No. 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Grider*, 585 F.Supp.3d 21, 29-31 (D.D.C. 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, 579 F.Supp.3d 28, 43-46 (D.D.C. 2021) (Kelly, J.); *United States v. Montgomery*, 578 F.Supp.3d 54 (D.D.C. 2021) (Moss, J.); *United States v. Mostofsky*, 579 F.Supp.3d 9, 24-27 (D.D.C. 2021) (Boasberg, J.); *United States v. Caldwell*, 581 F.Supp.3d 1 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 575 F.Supp.3d 16 (D.D.C. 2021) (Friedrich, J.).

[4] Nor is cause established by an appeal waiver like that in the Defendant's plea agreement. An appellate waiver is not a "factor external to the defense;" the defendants themselves agreed to it. *Carter v. United States*, No. 18-12723-B, 2018 WL 8667010, at *2 (11th Cir. Oct. 12, 2018) (appellate waiver does not constitute cause excusing procedural default); *United States v. Jones*, 56 F.3d 62 (4th Cir. 1995) (same). Allowing a defendant who agreed to waive her appellate rights

### b. The Defendant cannot demonstrate actual innocence.

#### i. 18 U.S.C. § 1512

The Defendant is not factually innocent of her crime of conviction. Without cause and prejudice, the Defendant must show that she is "actually innocent" for her claim to proceed. To succeed on the "actually innocent" prong, the Defendant must demonstrate that in light of all the evidence, it is more likely than not *no* reasonable juror would have convicted her of 18 U.S.C. §1512(c)(2) as that is now understood. *Bousley*, 523 U.S. at 623. This is an exacting standard that requires the Defendant to "make a stronger showing than that needed to establish prejudice." *United States v. Henderson*, No. 22-3003, 2024 WL 3546163, at *4 (D.C. Cir. July 26, 2024) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)). It is only met in "a narrow class of extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *See Johnson*, 2023 WL 9781680, at *1 (citation omitted). Here the Defendant cannot meet that bar.

The Defendant's conduct is sufficient even post-*Fischer*. The narrowed holding in *Fischer* now requires the government to show that a defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or as we earlier explained, other things used in the proceeding, or attempted to do so." 144 S. Ct. at 2190. On January 6, 2021, the Defendant was attempting to interfere with documents pertaining to the proceeding and intended to interfere with documents pertaining to the Certification of the Electoral College vote. For instance, after having made it into the Capitol building and the Senate Chamber, the Defendant systematically opened desks and looked through them along with the documents on top of them.

---

to establish "cause" and simply file a § 2255 motion instead would "turn[] the 'cause requirement on its head.'" *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995).

14

(ECF 106-1 at 3-5; Sentencing Exhibit 8.)  She showed a document that she found to her codefendants and on at least one occasion directed one codefendant to take a photo of a document. (ECF 106 at 23; Sentencing Exhibit 14; May 11, 2023 Tr. 97 ("But I have Ms. Morrison instructing Mr. Shalvey to photograph certain things and going through opening desks herself.").)  She also took photos of items she found interesting—such as a letter from Senator Mitt Romney to Vice President Pence.  (ECF 75 ¶ 12.)  Certainly, the natural and probable consequence of her actions, which shows her intent, is that her presence on the floor of the Senate chamber *and* her search for and handling of documents impeded access to documents.  As this Court has previously recognized, the Defendant's conduct on January 6 put her in a narrow group of individuals who took action with respect to documents.  (May 11, 2023 Tr. 95 ("And without putting too fine a point on it, you each defiled it by wandering around, rifling through senators' personal papers, photographing them, et cetera."); 98 ( "you are in a select group of people who made it to the Senate floor and then even on top of that, a very select group of people who were on the Senate floor rifling through the belongings of other people.").)  Given this conduct, a reasonable juror could very well conclude that the Defendant's conduct on January 6 is criminal under 18 U.S.C. §1512(c)(2).[5]  Indeed, it cannot be said that not a single juror would find that she did not possess the intent to interfere with records, documents, or other things, given her conduct with documents on the floor of the Senate, where the ballot counting and certification should have occurred at the time she occupied it.

---

[5] In determining actual innocence, the Court can also evaluate the Defendant's conduct under alternative theories.  *Baxter*, 761 F.3d at 28-29 ("in the context of a case in which a jury returned a general verdict when instructed on alternative theories of guilt, the rationale for the 'actual innocence' exception to procedural default dictates that the defendant must show his innocence of each of the alternative theories."). In this case, alternative theories include not only the substantive violation under Section 1512(c)(2), but also the attempted commission of that offense and aiding and abetting the offense.

The Defendant does not argue that she is actually innocent. Instead, she argues that the statement of offense to which she agreed does not "demonstrate that Morrison impaired or interfered with the use of records, documents, or other objects during an official proceeding". (Mot. at 3.) To assess actual innocence, the government is not restricted to the facts presented in the statement of offense supporting the Defendant's guilty plea. Indeed, "the Government is not limited to the existing record to rebut any showing that the petitioner might make . . . the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy". *Bousley*, 523 U.S. at 624; *see also Schlup*, 513 U.S. at 328 ("The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.") (quotations omitted). As the Defendant's motion points out, the statement of offense does reference the Defendant's interference with documents: "[In the Senate Chamber,] the defendant . . . looked through Senators' desks and took pictures of documents that were in and on those desks." (Mot. at 3; ECF 75 ¶11.) Even if that were insufficient to establish that the Defendant is not actually innocent under 18 U.S.C. § 1512(c)(2), it is not the only thing the Court should consider. The government submitted extensive evidence at sentencing, including multiple video exhibits, showing the Defendant's relevant conduct on January 6, 2021. As detailed above, the Defendant joined a riot and stormed the Capitol on January 6. She was prepared for violence, donning a helmet when she entered. She and her codefendants walked throughout the building, making it to the Senate Chamber, where she immediately went to work looking on and through Senators' desk. (ECF 106-1 at 3-5.) She handled, photographed, and reviewed documents. She admitted to being aware of the ongoing Certification, and she took a video of a monitor in the Senate Chamber showing that

16

the Senate was in recess. (ECF 75 ¶¶ 8, 12.) It is clear based on her conduct that she was looking for documents related to the Certification of the Electoral College vote that she admitted she was there to protest. (ECF 75 ¶ 8.) Her presence in the Senate Chamber and her handling of documents potentially relevant to the proceeding made them unavailable to Senators gathered for a joint session of Congress to conduct the official certification proceeding for the 2020 Presidential election. Accordingly, the Defendant cannot show that no reasonable juror would have convicted her for violating Section 1512(c)(2) even in light of the ruling in *Fischer*. She is not actually innocent of that offense.

> ii.    **18 U.S.C. § 372**

The Defendant is not actually innocent of the "more serious" charge of 18 U.S.C. § 372. To succeed on the "actually innocent" prong, the Defendant must show not only that she is actually innocent of the crimes for which she was charged but also of the "more serious" crimes the government forwent in the course of plea bargaining, *Bousley*, 523 U.S. at 624, or forgone charges of equal seriousness, where seriousness is determined with reference to the United States Sentencing Guidelines. *United States v. Caso*, 723 F.3d 215, 219-22, 225 (D.C. Cir. 2013); *Baxter*, 761 F.3d at 29 n. 15 ("In [*United States v. Caso*, 723 F.3d 215 (D.C. Cir. 2013)], we suggested that the most likely rationale for *Bousley*'s rule—that the showing of actual innocence must extend to more serious, and likely equally serious, charges forgone in exchange for a plea bargain—is that the rule ensures the defendant does not receive an unjustified windfall." (quotations omitted)). The charges need not have ever actually been brought to be considered forgone. *Caso*, 723 F.3d at 219-21 ("There is nothing strained about concluding that a prosecutor can forgo 'charges' either by dropping them after an indictment *or* by never bringing them at all.") (emphasis in the original).

17

The government also could have charged the Defendant with violating 18 U.S.C. § 372, a charge previously applied to other January 6 defendants, who, like the Defendant sought to induce Congress to leave their place of duty during the Certification. 18 U.S.C. § 372 provides:

> If two or more persons . . conspire to [(1)] prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or [(2)] to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both.

18 U.S.C. § 372.

The Defendant violated 18 U.S.C. § 372 as to both members of the United States Congress and police officers defending the Capitol. *See United States v. Nordean*, 21-cr-175 (TJK), 2022 WL 17583799, at *11-*15 (D.D.C. Dec. 11, 2022) (denying motion to dismiss charge under 18 U.S.C. § 372 and finding that members of Congress and U.S. Capitol Police hold an "office, trust, or place of confidence under the United States") (Kelly, J.). The Defendant functioned as a unit with her two codefendants on January 6. By working together to storm the Capitol and make it to the Senate Chamber, all in service of an effort to stop the certification proceeding, they sought to "prevent, by force, intimidation or threat" members of Congress and the police from discharging their respective duties of certifying the vote and defending the Capitol on January 6. The violent conduct and mindset of the Defendant and her co-conspirators was further displayed when they put on helmets prior to entering the building, (ECF 106 at 7), and when Shalvey showed the Defendant and Stottlemyer zip ties he found as they moved further into the building, (ECF 75 ¶ 11). In addition to participating in a riot that caused injury to many officers and threatened the lives of members of Congress, the Defendant was on the West Front as officers were attacked. She recorded on her phone police officers equipped with impact weapons to repel rioter and was

nearby when rioters and officers were fighting. (ECF 106 at 3, 5.) In addition, she "ominously" recorded a picture of the map of the Capitol. (ECF 75 ¶ 12; Sentencing Exhibit 11; May 11, 2023 Tr. ("And there were photos found on [the Defendant's] phone, including, again, somewhat ominously, a map of the Capitol.").) Each of these were threatening, intimidating, or forcible, assaultive activities. Similarly, the presence of the Defendant and other rioters caused the Senate to evacuate its chamber and prevented the return of Senators to the chamber where their duties for the certification proceeding were to be performed.

The guidelines for 18 U.S.C. § 372 are calculated identically to the guidelines for § 1512(c)(2) here.[6] Because the conspiracy targeted members of Congress and the police in order to obstruct the certification, it uses the obstruction guideline, U.S.S.G. §2J1.2. [7] *See United States v. Biggs*, 21-cr-175-2 (TJK), Aug. 31, 2023 Sent. Hrg. Tr. at 13-15 (applying § 2J1.2 to violation

---

[6] For the purposes of this response, the government uses the offense level of 14 that the Court calculated for the § 1512(c)(2) offense at sentencing, notwithstanding the fact that the D.C. Circuit has since held that certain enhancements no longer apply under Section 1512(c)(2). *United States v. Brock,* 94 F.4th 39, 51 (D.C. Cir. 2024).

[7] Under U.S.S.G. § 2X1.1, cmt. n.3, for a conspiracy conviction for which the substantive offense is not covered by a specific guideline, use § 2X5.1. Under § 2X5.1, since there is no applicable Chapter Two Guideline for an offense of preventing officers of the United States from discharging their duties in the Statutory Appendix, use "the most analogous guideline." The "officers" of the United States who were the victims of this count were the Members of Congress and law enforcement officers. Because the object of the defendants' conspiracy—preventing Members of Congress from performing their constitutional duties at the Capitol on January 6—was designed to obstruct the administration of justice, the most analogous guideline is U.S.S.G. § 2J1.2, "Obstruction of Justice." The victims of this effort—Members of Congress and the federal law enforcement who were protecting them—are indistinguishable for this purpose. Indeed, Judge Mehta applied §2J1.2 to violations of 18 U.S.C. § 372 by members of the Oath Keepers. *See United States v. Elmer Stewart Rhodes, et al.*, No. 22-cr-15 (APM). And the First Circuit agreed that §2J1.2, rather than §2A2.4, was the most analogous guideline for a defendant convicted of violating 18 U.S.C. § 372, when the defendant's conviction was premised on the defendant conspiring to prevent federal officers from arresting other people, and thus "obstructed the administration of justice." *United States v. Gerhard*, 615 F.3d 7, 33 (1st Cir. 2010); *see also United States v. Rakes*, 510 F.3d 1280, 1290 (10th Cir. 2007) (acknowledging that a § 372 conviction for conspiring to impede and thwart the prosecution of other people would constitute "imped[ing] the due administration of the law," and thus would warrant application of §2J1.2 rather than §2A2.4).

19

of 18 U.S.C. § 372 where rioters, like the Defendant, sought to induce Congress to leave their place of duty during the certification); *see also, e.g., United States v. Meggs*, 22-cr-15-2 (APM), May 25, 2023 Sent. Hrg. Tr. at 32 (same). Thus, 18 U.S.C. § 372 also qualifies as an equally serious offense under the guidelines, and the Defendant has not established that no reasonable jury would find her guilty of violating the statute.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny the Defendant's Petition To Vacate Conviction and Sentence.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Kathryn E. Bolas*
KATHRYN E. BOLAS
Assistant U.S. Attorney
NY Bar No. 5704234
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
(202) 252-0872
Kathryn.Bolas@usdoj.gov